# United States Court of Appeals for the Federal Circuit

---

**HAMP'S CONSTRUCTION LLC,**
*Appellant*

**v.**

**SECRETARY OF THE ARMY,**
*Appellee*

---

2024-1528

---

Appeal from the Armed Services Board of Contract Appeals in No. 62257, Administrative Judge J. Reid Prouty, Administrative Judge Owen C. Wilson, Administrative Judge Reba Page.

---

Decided: June 30, 2026

---

MATTHEW WAYNE WILLIS, Arnold, Willis & Conway, Dyersburg, TN, argued for appellant. Also represented by SAMMIE LEO ARNOLD.

BORISLAV KUSHNIR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by PATRICIA M. MCCARTHY, CORINNE ANNE NIOSI, BRETT SHUMATE.

---

Before LOURIE, REYNA, and CUNNINGHAM, *Circuit Judges.*

CUNNINGHAM*, Circuit Judge.*

Hamp's Construction LLC ("Hamp's Construction") appeals a decision of the Armed Services Board of Contract Appeals ("Board") denying Hamp's Construction's Type I differing site condition claim. *Hamp's Construction LLC*, ASBCA No. 62257, 2024 WL 669328 (Feb. 2, 2024) ("*Decision*") (App'x 1–33).[1]  For the reasons explained below, we affirm.

## I. BACKGROUND

This appeal concerns a Type I differing site condition claim related to a flood control project for the Trapp Canal in Jefferson Parish, Louisiana. *Decision* at 1–3.  On July 12, 2012, the United States Army Corps of Engineers ("the Corps") issued a solicitation for the Trapp Canal project. *Decision* at 3; S. App'x 1.  As originally issued, the solicitation contained a default prohibition forbidding the use of barges, but on August 3, 2012, the Corps issued an amendment rescinding that provision.  *Decision* at 3; S. App'x 3–4, 41.  The solicitation incorporated by reference Federal Acquisition Regulation ("FAR") clauses 52.236-2 Differing Site Conditions, and 52.236-3 Site Investigation and Conditions Affecting the Work.[2]  *Decision* at 3;

---

[1]    We refer to the appendix filed by Hamp's Construction, ECF No. 16, as "App'x" and the supplemental appendix filed by the Secretary of the Army, ECF No. 24, as "S. App'x."  Because the reported version of the Board's decision is not paginated, citations in this opinion are to the version of the Board's decision included in the Appendix. For example, *Decision* at 1 is found at App'x 1.

[2]    48 C.F.R. § 52.236-2(a) states, in relevant part: "The Contractor shall promptly, and before the conditions are disturbed, give a written notice to the

S. App'x 14; *see* 48 C.F.R. §§ 52.236-2, 52.236-3. The solicitation also included cross-sections of the canal and ten boring logs taken at various places along the canal in 2008. *Decision* at 3; S. App'x 43–64.[3]

Mr. Jens Lorenz, an employee of Cheniere Construction, Inc. ("Cheniere"), performed two pre-bid site inspections of the Trapp Canal and took a number of photographs of the site. *Decision* at 4–5, 20–21; App'x 98–102. On August 21, 2012, Hamp's Construction submitted a bid with Cheniere as its subcontractor. *Decision* at 5; S. App'x 65. Hamp's Construction was awarded the contract on September 4, 2012, and work on the project began shortly thereafter. *Decision* at 5; S. App'x 65, 66.

The worksite consisted of four quadrants: northwest, northeast, southwest, and southeast. The canal divided the site between east and west, and a local road divided the site between north and south. *Decision* at 5–6. The first phase of the project involved the northern quadrants, and

---

Contracting Officer of (1) subsurface or latent physical conditions at the site which differ materially from those indicated in this contract[.]"

48 C.F.R. § 52.236-3(b) states: "The Government assumes no responsibility for any conclusions or interpretations made by the Contractor based on the information made available by the Government. Nor does the Government assume responsibility for any understanding reached or representation made concerning conditions which can affect the work by any of its officers or agents before the execution of this contract, unless that understanding or representation is expressly stated in this contract."

[3]    Another set of borings was taken in 2000, but these boring logs were not included or specifically identified in the solicitation. *Decision* at 4.

Hamp's Construction did not encounter any major problems while working in those areas. *Decision* at 6–7.

However, in May 2013, Hamp's Construction's troubles began while preparing for work on the southern quadrants. *Decision* at 7. At that time, it discovered that part of the bank of the southwest quadrant had collapsed, and there was a depression measuring approximately 100 to 200 feet by 25 feet. *Decision* at 7. Hamp's Construction found four additional areas of failure and determined it would not be safe "to operate loaded construction trucks on the southwest bank," instead opting to use equipment operating from barges. *Decision* at 8. These problems with bank stability and need to change means of construction significantly delayed completion of the project. *Decision* at 8, 25.

Hamp's Construction communicated its concerns about the southwest bank to the Corps. *Decision* at 8, 24. On November 6, 2018, Hamp's Construction submitted a request for equitable adjustment ("REA") of $3,948,833 and an extension of 237 calendar days to complete the project based on "encounter[ing] differing site conditions and defective specifications on the west bank of Trapp Canal, south of Harvey Blvd." *Decision* at 25 (internal quotation marks omitted); S. App'x 69–73. On March 1, 2019, the contracting officer denied the REA, citing an absence of proof "that a differing site condition existed" under the FAR 52.236-2 criteria. *Decision* at 25; S. App'x 74–75. Hamp's Construction responded, requesting that its REA be converted to a claim pursuant to the Contract Disputes Act, certifying its proposal under the Disputes clause of the contract, and requesting a final decision from the contracting officer. *Decision* at 25; S. App'x 76. On August 30, 2019, the contracting officer denied Hamp's Construction's claim. *Decision* at 25; S. App'x 77–96.

Hamp's Construction appealed to the Board, which held a hearing in December 2022. App'x 36, 39, 42. On February 2, 2024, the Board denied the appeal, concluding that

"[t]hough [Hamp's Construction] undoubtedly encountered conditions on the southwest bank of the Trapp Canal that it did not expect and which caused it delays and increased costs," the Board "[did] not find that [Hamp's Construction] proved a necessary element of a Type I differing site condition, that the conditions found were contrary to the representations in the contract documents—primarily because . . . there were no representations in those documents for the area where [Hamp's Construction] encountered its problems." *Decision* at 33.

Hamp's Construction timely appealed. We have jurisdiction under 41 U.S.C. § 7107(a)(1)(A) and 28 U.S.C. § 1295(a)(10).

## II. STANDARD OF REVIEW

"We review de novo the Board's conclusions of law, including . . . the interpretation of a government contract." *Cooper/Ports Am., LLC v. Sec'y of Def.*, 959 F.3d 1373, 1377 (Fed. Cir. 2020) (internal quotation marks and citations omitted). "[T]he decision of the [Board] on a question of fact is final and conclusive and may not be set aside unless the decision is—(A) fraudulent, arbitrary, or capricious; (B) so grossly erroneous as to necessarily imply bad faith; or (C) not supported by substantial evidence." 41 U.S.C. § 7107(b)(2); *see Boeing Co. v. Sec'y of Air Force*, 983 F.3d 1321, 1333 (Fed. Cir. 2020).

## III. DISCUSSION

Before this court, Hamp's Construction argues that the Board erred in: (1) determining that the contract did not provide any representations as to the southwest bank, Appellant's Br. 25–29; and (2) determining that the problems encountered were not as severe as represented by Hamp's Construction and the ease of their repair without any competent proof to support its decision, *id.* at 29–32. We address each argument in turn.

A.

Hamp's Construction argues that the Board erred in determining that the contract did not provide any representations as to the southwest bank in denying its Type I differing site condition claim. *See* Appellant's Br. 25–29. We disagree.

Type I differing site conditions arise when "the conditions encountered differ from those indicated in the contract[.]" *H.B. Mac, Inc. v. United States*, 153 F.3d 1338, 1343 (Fed. Cir. 1998). "In order to be eligible to recover for a Type I differing site condition, a contractor must first prove, as a threshold matter, that the contract contained some identification of the conditions to be encountered at the site." *Renda Marine, Inc. v. United States*, 509 F.3d 1372, 1376 (Fed. Cir. 2007) (citing *H.B. Mac*, 153 F.3d at 1345; *P.J. Maffei Bldg. Wrecking Corp. v. United States*, 732 F.2d 913, 916 (Fed. Cir. 1984)). Accordingly, "[a] contractor cannot be eligible for an equitable adjustment for a Type I differing site condition unless the contract indicated what that condition would be." *H.B. Mac*, 153 F.3d at 1345. While "a contract 'indication' need not be explicit or specific, the contract documents must still provide sufficient grounds to justify a bidder's expectation of latent conditions materially different from those actually encountered." *P.J. Maffei*, 732 F.2d at 916 (citing *Foster Constr. C.A. & Williams Bros. v. United States,* 435 F.2d 873, 875 (Ct. Cl. 1970)). "[T]here must be reasonably plain or positive indications in the bid information or contract documents that such subsurface conditions would be otherwise than actually found in contract performance." *Id.* (alteration in original) (quoting *Pac. Alaska Contractors, Inc. v. United States*, 436 F.2d 461, 469 (Ct. Cl. 1971)); *see also Comtrol, Inc. v. United States*, 294 F.3d 1357, 1363 (Fed. Cir. 2002) (requiring "affirmative[]" representation for a Type I differing site condition). Determining whether a contract contains such plain and positive "indications" is a matter of contract interpretation that this court reviews

de novo. *P.J. Maffei,* 732 F.2d at 916; *Randa/Madison Joint Venture III v. Dahlberg,* 239 F.3d 1264, 1274 (Fed. Cir. 2001). "[A] proper technique of contract interpretation is for the court to place itself into the shoes of a reasonable and prudent contractor and decide how such a contractor would act in interpreting the contract documents." *H.B. Mac,* 153 F. 3d at 1345.

Specifically, Hamp's Construction argues that the boring logs, contract drawings, and solicitation amount to indications[4] as to the subsurface conditions at the site. Appellant's Br. 25–29. We discuss each contract document in turn.

i.

First, we turn to the boring logs provided with the contract. Hamp's Construction argues that the subsurface conditions on the other banks were substantially similar to those on the southwest bank and that the provided boring logs amounted to an "implied representation" that indicated necessary soil strengths to permit "top-of-bank performance" on the southwest bank. Appellant's Br. 26, 28. We disagree.

The solicitation included ten boring logs taken in 2008. *Decision* at 3. Eight of these boring logs were taken from the east side of the canal, and two of the boring logs were taken from the west side of the canal. *Id.* Hamp's Construction admits that only one of the eight boring logs provided with the contract was located on the "northern most end" of the southwest bank and was not located where Hamp's Construction encountered difficulties. Appellant's Br. 26; Appellant's Reply Br. 1. Additionally, Hamp's

---

[4]  Both parties agreed that implicit "representation" and "indication" are interchangeable terms. Oral Arg. at 03:12–03:24, 22:44–23:24, http://www.cafc.uscourts.gov/oral-arguments/24-1528_12082025.mp3.

Construction's own geotechnical expert, Dr. Traughber, stated that "[t]he Corps did not present <u>any</u> boring log information in the Contract Documents for the west side canal region for which the Contractor alleges that unsafe conditions exist for land-based construction operations." App'x 214 (emphasis in original); *Decision* at 29.

Hamp's Construction argues that it was reasonable to rely on the boring logs because "the two borings on the [west[5]] bank were essentially identical to those throughout the remainder of the project," Appellant's Br. 26, and the boring logs at other locations "were consistent with each other and indicated that the canal banks would support the operation of construction equipment on the top of bank." Appellant's Reply Br. 12. We again disagree.[6]

The Board did not err in its determination that it would have been unreasonable for a contractor to rely on the borings taken from locations other than the southwest bank because substantial evidence supports the Board's underlying finding that "the conditions on the southwest bank

---

[5]    Hamp's Construction states "SW" here in its brief, but, as noted above, admits in its reply brief that one boring was on the northwest bank and one was at the "northern most end" of the southwest bank. Appellant's Reply Br. at 1. For clarity, we refer to these borings as being on the "west" bank.

[6]    Hamp's Construction also argues that the mere absence or omission of boring logs from the southwest bank provided an "implied representation as to the subsurface conditions." Appellant's Br. 26–27, Appellant's Reply Br. 12–17. However, this argument was not presented to the Board and is forfeited. S. App'x 97–121; S. App'x 123–41; *see, e.g.*, *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("[A] position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances.").

were notably different—and far worse—than those on the eastern side of the canal." *Decision* at 29; *id.* at 24. "The reasonableness of reliance on borings taken at a distance from a project site cannot be determined based on a bright line rule, but must rather be determined based on the geologic and topographic features present in each case." *H.B. Mac*, 153 F.3d at 1346.

Although Hamp's Construction argues that "the data provided indicated conditions substantially similar" on the southwest and other banks, Appellant's Br. 28, the Board's finding to the contrary is supported by substantial evidence. First, the Board supported its finding with a review of reports and testimony from Hamp's Construction's experts, Dr. Traughber and Mr. Connole. *Decision* at 17–19. Specifically, the Board cited Dr. Traughber's expert report, which identified a "soil void filled with a thin slurry" at WB-1, a boring log taken from the west bank. *Decision* at 18; *see also* App'x 215–16 (stating 2008 boring WB-1 "depicts a slurry-filled void"). In his discussion of the boring logs, Dr. Traughber additionally stated: "The soil conditions/stratification are markedly different on the east and west sides of the Trapp Canal within the reach of the subject Construction Contract." App'x 213. Second, the Board determined that the cross-sections provided with the solicitation show a "relatively steep drop off in the western banks compared to the bank on the eastern side[.]" *Decision* at 19, 23; S. App'x 43–54. Third, the Board found that the photographic evidence taken by Mr. Lorenz during his pre-bid site visits, among other evidence, reflected that "[the southwest bank] was the kind of place that such slope failures could happen and had happened in the past." *Decision* at 23; *see id.* at 21–23.

Given that the Board's finding that conditions on the west bank were not the same as conditions at other locations at the worksite is supported by substantial evidence, a reasonable contractor would not regard the boring logs Hamp's Construction possessed as constituting indications

as to the conditions on the southwest bank. *See Decision* at 24 (stating that pre-bid evidence "would have made clear to a reasonable contractor that conditions on the west bank of the Trapp Canal were not the same, and were substantially worse, than those on its east bank"); *Randa/Madison*, 239 F.3d at 1274–75 (applying de novo review of contract interpretation and agreeing that "substantial evidence" supported the Board's underlying factual determination regarding indication of soil permeability range); *H.B. Mac*, 153 F.3d at 1346–47 (determining a reasonable contractor would not have understood the contract documents, including soil borings taken about 300 yards from a site in an area with high variability in subsurface conditions, as providing affirmative indication of subsurface conditions at the site); *see also Meridian Eng'g Co. v. United States*, 885 F.3d 1351, 1357–58 (Fed. Cir. 2018) (determining a reasonable contractor would not understand contract and boring logs as providing affirmative indication of non-saturated soil conditions despite indications of "hard unyielding material" at other parts of the site).

Hamp's Construction's reliance on *Renda Marine, Inc. v. United States*, 509 F.3d 1372 (Fed. Cir. 2007) for its position that it reasonably relied on borings from areas outside of the southwest bank is misplaced. Appellant's Reply Br. 11. In *Renda Marine*, Renda asserted a Type I differing site condition for dredging work in an area known as the Flare Area, when it encountered stiff clays where it claimed that it expected to encounter soft clays. 509 F.3d at 1376. Renda argued that it was reasonable to rely solely on two boring logs, taken in the Flare Area at depths below where it would be dredging, that did not indicate the presence of stiff clays, and ignore other boring logs from the opposite bank aligned with the Flare Area that did show the presence of stiff clays. *Id.* at 1376–77. This court did not disturb the trial court's rejection of Renda's Type I claim, which rejection was premised on the trial court's findings that stiff clays were foreseeable in the Flare Area. *Id.*

at 1378. In doing so, this court's decision relied on a separate requirement of a Type I differing site conditions claim, namely "that the conditions encountered were not reasonably foreseeable in light of all information available to the contractor when bidding," a question of fact that is reviewed for clear error. *Id.* at 1376, 1378. By contrast, this appeal addresses the Board's determination on the "threshold matter" that the contract did not contain representations or indications as to the subsurface conditions on the southwest bank. *Id.* at 1376; Appellant's Br. 25–29; *Decision* at 27–30.

Additionally, rather than possessing information in the contract documents and disregarding it, Hamp's Construction simply did not possess boring logs or other information indicating what the conditions were like on the southwest bank. *See Decision* at 3 (noting eight borings on the east side of the canal and two on the northern portion of the west side). Given the Board's finding, supported by substantial evidence, that conditions on the southwest bank were visibly different and worse than in other locations, the boring logs Hamp's Construction possessed did not constitute indications to a reasonable contractor as to the conditions on the southwest bank.

In sum, we agree with the Board's determination that a reasonable contractor would not regard the boring logs provided with the contract from other areas of the site as indicating the geotechnical conditions in the locations where the failures actually occurred.

ii.

Next, we turn to the contract drawings. Hamp's Construction argues that "the government's contract drawings . . . contained notes which expressly showed 'Construction Traffic' on the top of the [southwest] and [southeast] banks," thus allowing a contractor to "reasonably infer the sufficiency of the top-of-bank for normal construction equipment utilized for the contract work."

Appellant's Br. 25.  Other than a mention in its factual representations, S. App'x 108, Hamp's Construction failed to make any argument to the Board about contract drawings depicting construction traffic access.    S. App'x 117–21; S. App'x 123–41.  Accordingly, this argument is forfeited. *See, e.g., In re Google Tech. Holdings*, 980 F.3d at 863. Even if we were to reach the merits of this argument, Hamp's Construction failed to include these drawings in its appendix on appeal, making it nearly impossible for this Court to review the alleged representations contained in those drawings.  Rather, Hamp's Construction cites to witness testimony stating that drawings in the contract contained "arrows" indicating "access" and "construction traffic."    Appellant's Br. 7; Appellant's Reply Br. 2; *see* App'x 122.  Accordingly, this evidence is insufficient to constitute affirmative indications of sub-surface conditions to a reasonable contractor.  *See H.B. Mac*, 153 F.3d at 1345.

iii.

Last, we turn to the solicitation.  Hamp's Construction argues that, because the original solicitation prohibited the use of marine equipment, this amounted to a "contractual indication of the suitability of the banks for top of bank operations."    Appellant's Br. 23, 25; *see* S. Appx 41 ("No barges will be allowed in the canal[.]").  We disagree.

As the Board recognized, Hamp's Construction's argument on this point "collapses" because this prohibition was removed from the solicitation before Hamp's Construction made its bid.  *Decision* at 30; S. App'x 4 (substituted with "The canal work may have to be performed using a floating platform, barge and/or other specialized equipment."); S. App'x 3 (amended August 3, 2012); S. App'x 65 (bid submitted August 21, 2012); *cf. H.B. Mac*, 153 F.3d at 1347 ("Mac cannot rely on [a document] to show a differing site condition because [the document] was not included in the bid documents[.]").  Hamp's Construction also explicitly disclaimed its reliance on the original prohibition, stating

that it was "not the basis for its claim" before the Board. S. App'x 124. Thus, a reasonable contractor would not interpret the pre-amendment solicitation as providing an indication as to sub-surface conditions at the site.

A reasonable contractor would not interpret the boring logs, contract drawings, or pre-amendment solicitation to make representations as to the site conditions. Accordingly, we hold that a reasonable contractor, reading the contract documents as a whole, would not interpret them as providing indications as to the site conditions on the southwest bank of Trapp Canal where the unexpected conditions occurred.

## B.

Hamp's Construction further argues that "[t]he Board erred in determining that the problems encountered were not as severe as represented by [Hamp's Construction] and arbitrarily determined the ease of their repair without any competent proof to substantiate its decision." Appellant's Br. 29–32. Indicating that "there was no testimony presented as to any repairs that could have been made," Hamp's Construction argues that "the Board's determination as to the nature and feasibility of potential repairs or remediation are not based on facts presented to it" and "cannot legally form the basis for its decisions." *Id.* at 30, 31–32. We disagree with Hamp's Construction's characterization of the Board's decision.

Despite the Board's comments on severity and ease of repair, the Board did not deny Hamp's Construction's appeal based on a finding that the problems were insufficiently severe. To the contrary, the Board found that "[t]here were real problems on the southwest bank" and that "[Hamp's Construction] exercised its judgment reasonably to find this portion of the bank to be in a condition preventing heavy equipment from operating on it." *Decision* at 16. Instead, the Board's decision rests on a determination that, despite Hamp's Construction's "strong case

that it was surprised" by the conditions on the southwest bank, "it fail[ed] in its request for relief because it cannot prove that the government provided misleading information in the contract documents." *Decision* at 27, 33. Because we agree with the Board that the contract contained no indications as to subsurface conditions on the southwest bank—a threshold requirement of a Type I claim, *Renda Marine*, 509 F.3d at 1376—the Board's statements on severity make no difference to the outcome on appeal.

## IV. CONCLUSION

We have considered Hamp's Construction's remaining arguments and find them unpersuasive. For the reasons above, we affirm.

## AFFIRMED